IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

KEITH W. HILLIARD,                           )
                                             )
                    Plaintiff,               )
                                             )
            v.                               )     Civil Action No. 19-861
                                             )
ANDREW SAUL,                                 )
Commissioner of Social Security,             )
                                             )
                    Defendant.               )


O R D E R

AND NOW, this 8th day of September, 2020, upon consideration of the parties'
cross-motions for summary judgment, the Court, upon review of the Commissioner of Social
Security's final decision denying Plaintiff's claim for disability insurance benefits under
Subchapter II of the Social Security Act, 42 U.S.C. § 401 et seq., finds that the Commissioner's
findings are supported by substantial evidence and, accordingly, affirms.  See 42 U.S.C. §
405(g); Jesurum v. Secretary of U.S. Department of Health & Human Services, 48 F.3d 114, 117
(3d Cir. 1995); Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992), cert. denied sub nom.,
507 U.S. 924 (1993); Brown v. Bowen, 845 F.2d 1211, 1213 (3d Cir. 1988).  See also Berry v.
Sullivan, 738 F. Supp. 942, 944 (W.D. Pa. 1990) (if supported by substantial evidence, the
Commissioner's decision must be affirmed, as a federal court may neither reweigh the evidence,

nor reverse, merely because it would have decided the claim differently) (citing Cotter v. Harris,

642 F.2d 700, 705 (3d Cir. 1981)).[1]

---

[1]        The Commissioner found Plaintiff to be disabled under the Social Security Act as of February 8, 2010.  (R. 217).  However, it was determined that Plaintiff was not eligible for benefits under Title XVI of the Act, 42 U.S.C. § 1381 et seq., based on the level of his financial resources.  (R. 218).  Further, his date last insured is March 31, 2007 (R. 18), so he likewise is ineligible for benefits under Title II of the Act, 42 U.S.C. § 401 et seq., as he was found to be disabled after that date.   Plaintiff does not challenge the Commissioner's Title XVI determination but does assert that he became disabled prior to his date last insured, and therefore that he is eligible for benefits pursuant to Title II.  In so arguing, Plaintiff contends that the Administrative Law Judge ("ALJ") failed to properly evaluate the medical opinions in the record, including those of his treating physician Kevin B. Freedman, M.D., and to properly assess his cervical condition, in formulating his residual functional capacity ("RFC") and in finding him to be not disabled prior to his date last insured.  The Court finds no merit to these arguments and instead finds that substantial evidence supports the ALJ's decision that Plaintiff is not entitled to benefits.

        Plaintiff first asserts that the ALJ erred in failing to defer to the August 17, 2005, and March 14, 2006 opinions submitted by Dr. Freedman, one of his treating physicians, limiting him to sedentary work in contrast to the ALJ's RFC findings.  (R. 796-806).  As Plaintiff points out, when assessing a claimant's application for benefits, the opinion of the claimant's treating physician generally is to be afforded significant weight.  See Fargnoli v. Massanari, 247 F.3d 34, 43 (3d Cir. 2001); Plummer v. Apfel, 186 F.3d 422, 429 (3d Cir. 1999).  In fact, the regulations provide that for claims, such as this one, filed before March 27, 2017, a treating physician's opinion is to be given "controlling weight" so long as the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques and not inconsistent with other substantial evidence in the record.   20 C.F.R.  § 404.1527(c)(2);  Fargnoli, 247 F.3d at 43; Plummer, 186 F.3d at 429.   As a result, the ALJ may reject a treating physician's opinion outright only on the basis of contradictory medical evidence, and not on the basis of the ALJ's own judgment or speculation, although he or she may afford a treating physician's opinion more or less weight depending upon the extent to which supporting explanations are provided.  See Plummer, 186 F.3d at 429.  However, it is also important to remember that:

> The ALJ -- not treating or examining physicians or State agency consultants -- must make the ultimate disability and RFC determinations.   Although treating and examining physician opinions often deserve more weight than the opinions of doctors who review records, "[t]he law is clear . . . that the opinion of a treating physician does not bind the ALJ on the issue of functional capacity[.]"   Brown v. Astrue, 649 F.3d 193, 197 n. 2 (3d Cir.2011).

Chandler v. Comm'r of Soc. Sec., 667 F.3d 356, 361 (3d Cir. 2011) (internal citations omitted in part).  This is particularly pertinent in a case like this one where there is a good deal of objective medical evidence and several opinions regarding Plaintiff's functional capacity.  An important part of the ALJ's job in a case like this is to consider the consistency of each medical opinion with the other evidence, including the other medical opinions of record.  See 20 C.F.R. § 404.1527(c)(4).  Here, the ALJ did just that.

The Court first notes that the ALJ did not reject Dr. Freedman's opinions; rather, he afforded them partial weight.  (R. 26).  In explaining why he did so, he stated that Dr. Freedman's opinions were not really "definitive opinion[s]."  (Id.).  While Plaintiff argues that the ALJ, in doing so, engaged in inappropriate speculation, the ALJ explained the basis for his finding and the record supports his analysis.  In his August 17 opinion, Dr. Freedman stated that Plaintiff "would ***probably*** be on a ***sedentary-type*** duty with regards to the right shoulder."  (R. 797) (emphasis added).  As the ALJ found, this is hardly a definitive opinion of Plaintiff's specific functional limitations.  Moreover, in his March 14, 2006 letter, Dr. Freedman opined that Plaintiff was "***likely*** to have permanent restrictions with no lifting greater than ten pounds." (R. 805) (emphasis added).  Moreover, he imposed the ten-pound lifting restriction only for a month initially, and he very specifically expressed the need for Plaintiff to undergo a functional capacity assessment to make a "permanent determination of his lifting requirement which will be somewhere between sedentary and light duty."  (R. 805).  This was consistent with his earlier stated belief in the need for a functional capacity evaluation to determine Plaintiff's permanent restrictions.  (R. 799).  Indeed, the ALJ very thoroughly and accurately considered the entirety of Dr. Freedman's records regarding Plaintiff's condition which the Court agrees offer a soft opinion at best.

In addition, as noted, the ALJ considered Dr. Freedman's statements in light of the objective medical evidence and the other medical opinions indicating that Plaintiff was less restricted.  For instance, he gave significant weight to medical expert Dr. David Owens' testimony at the July 9, 2015 administrative hearing that Plaintiff could perform light work.  (R. 26).  As the ALJ pointed out, Dr. Owens' testimony specifically addressed Plaintiff's ability to function during the relevant time period from 2001 to 2007.  (R. 26, 107).  He likewise gave significant weight to Dr. Lee Osterman's 2004 independent medical evaluation implying that Plaintiff could perform at least light work with some restrictions.  (R. 26, 857-61).  While an ALJ must consider the treating relationship between a claimant and an opining doctor, when the medical opinion of a treating source conflicts with that of a non-treating, or even a non-examining physician, "the ALJ may choose whom to credit."  Morales v. Apfel, 225 F.3d 310, 317 (3d Cir. 2000).  See also Dula v. Barnhart, 129 Fed. Appx. 715, 718-19 (3d Cir. 2005).  The ALJ, of course, "'cannot reject evidence for no reason or for the wrong reason,'" Morales, 225 F.3d at 317 (quoting Plummer, 186 F.3d at 429), and can only give the opinion of a non-treating, non-examining physician weight insofar as it is supported by evidence in the case record, considering such factors as the supportability of the opinion in the evidence, the consistency of the opinion with the record as a whole, including other medical opinions, and any explanation provided for the opinion.  See Social Security Ruling 96-6p, 1996 WL 374180 (S.S.A.), at *2 (1996).  The ALJ did so here, and his findings are supported by substantial evidence.

Plaintiff, though, contends that the ALJ also improperly evaluated other medical opinions which he argues supported Dr. Freedman's findings. However, the ALJ did consider these opinions and clearly explained why he weighed them as he did. In regard to the September 8, 2005 opinion of Dr. E. Michael Okin, the ALJ noted that he had only examined Plaintiff once and that he offered no opinion as to Plaintiff's specific functional limitations. (R. 26, 1168-70). As the ALJ noted, it is well established that a physician's statement that a claimant is "disabled" or "unable to work" is not binding on the ALJ, as opinions as to whether a claimant is disabled is reserved to the Commissioner. See 20 C.F.R. § 404.1527(d)(1); Griffin v. Comm'r of Soc. Sec., 305 Fed. Appx. 886, 891 (3d Cir. 2009); Knepp v. Apfel, 204 F.3d 78, 85 (3d Cir. 2000). Moreover, Dr. Okin expressly stated that Plaintiff had not reached maximum medical improvement as of the date of his report. (R. 1170).

As for consultative examiner Malcolm Harris, M.D., the ALJ again noted that his October 26, 2011 opinion was based on a one-time examination of Plaintiff. Furthermore, he noted that the wording of Dr. Harris' opinion indicates that he was opining as to Plaintiff's ability to function as of the time of the 2011 examination. (R. 26-27). The record supports this finding, as Dr. Harris stated the proposed limitations prospectively and nothing in the opinion reflects an intention on Dr. Harris' part to opine to any other time period. (R. 1014-18). To be eligible for Title II benefits, Plaintiff had to establish that he was disabled as of his date last insured. See 42 U.S.C. § 423(a)(1)(A). Thus, Plaintiff must establish the existence of an impairment "that precluded [him] from performing substantial gainful activity for a continuous period of twelve months prior to the expiration of her insured status." Kelley v. Barnhart, 138 Fed. Appx. 505, 507 (3d Cir. 2005). Given that the ALJ properly found Dr. Harris' opinion to relate to a period substantially later than the date last insured, he was more than justified in giving it little weight. This is especially true given that Plaintiff was found to be disabled as of February of 2010, a year and a half prior to Dr. Harris' examination and evaluation.

Plaintiff further argues that the ALJ failed to properly assess his cervical condition, specifically, that he erred in concluding that his cervical issues were not medically determinable as of the date last insured. However, this does not accurately characterize the ALJ's discussion of this matter. First, the Court notes that the ALJ did find Plaintiff's degenerative disc disease of the cervical spine to constitute a severe impairment at Step Two of the sequential process. (R. 18). Moreover, not only did he discuss Plaintiff's cervical degeneration at great length, he did factor it into the RFC. While the ALJ found that "no medically determinable cervical degeneration was established prior to the date last insured," he expressly "considered later onset of such a condition to the extent that it suggests some pre-DLI limitation." (R. 25). He further explained that limiting Plaintiff to light work and the restrictions in the RFC pertaining to standing, walking, and overhead work activities "account for potential cervical issues prior to the date last insured." (Id.). The ALJ, in fact explained how he factored all of Plaintiff's severe impairments in formulating the RFC. (Id.).

The ALJ clearly acknowledged that Plaintiff's issues with his cervical spine pre-date his date last insured. For example, he referenced Plaintiff's "long standing neck pain and bilateral upper extremity numbness and tingling and left upper extremity weakness consistent with cervical spondylitic myelopathy" and stated that the record showed some congenital

Therefore, IT IS HEREBY ORDERED that Plaintiff's Motion for Summary Judgment (document No. 10) is DENIED and that Defendant's Motion for Summary Judgment (document No. 12) is GRANTED.

s/Alan N. Bloch
United States District Judge

ecf:        Counsel of record

---

abnormalities of the spinal cord.  (R. 24).  Again, the issue is whether Plaintiff was disabled prior to the expiration of his insured status.  See 42 U.S.C. § 423(a)(1)(A); Kelley, 138 Fed. Appx. at 507.  The mere existence of an underlying medical condition prior to the date last insured is not enough; the claimant must establish that the impairment was disabling as of that date.  See Perez v. Commissioner of Soc. Sec., 521 Fed. Appx. 51, 54-55 (3d Cir. 2013).  The ALJ carefully considered this issue, and substantial evidence supports his analysis.  Indeed, Dr. Owens specifically addressed the issue in his testimony, stating that although Plaintiff had symptoms and pathology in the cervical spine prior to his date last insured, it was not medically documented until 2011.  (R. 108).  The ALJ also noted and relied on a normal cervical spine examination with Dr. Freedman in August of 2005.  (R. 24, 796).

All of this constitutes substantial evidence in support of the ALJ's findings and as to the formulation of Plaintiff's RFC, especially in light of the United States Supreme Court's recent reminder that the threshold for meeting the substantial evidence standard "is not high." Biestek v. Berryhill, 139 S. Ct. 1148, 1154 (2019).  Plaintiff essentially is asking the Court to adopt his own analysis as to how the ALJ should have treated the relevant medical opinions and analyzed the relevant evidence.   However, if supported by substantial evidence, the Commissioner's decision must be affirmed, as a federal court may neither reweigh the evidence, nor reverse, merely because it would have decided the claim differently.  See Monsour Med. Ctr. v. Heckler, 806 F.2d 1185, 1190-91 (3d Cir. 1986); Berry, 738 F. Supp. at 944 (citing Cotter, 642 F.2d at 705).  Likewise, it is not enough that Plaintiff offers his own analysis as to how he believes the record supports his claim that Dr. Freedman's opinion was entitled to greater weight. "The presence of evidence in the record that supports a contrary conclusion does not undermine the [ALJ's] decision so long as the record provides substantial support for that decision." Malloy v. Comm'r of Soc. Sec., 306 Fed. Appx. 761, 764 (3d Cir. 2009).

Accordingly, for all of the reasons set forth herein, the Court finds that substantial evidence supports the ALJ's decision and therefore affirms.

5